UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD COUNTY DIVISION

IN RE:

CARL'S FURNITURE, INC.,             CASE NO. 11-24203-JKO
d/b/a CARL'S,                               CHAPTER 11
_____Debtor_____/

### DEBTOR' EMERGENCY MOTION TO USE CASH COLLATERAL OF RETAIL CREDIT CORPORATION

### EMERGENCY HEARING REQUESTED

#### Reason for Exigency

**The Debtor requires the use of cash collateral of Retail Credit Corporation to continue it business operations. Therefore, the Debtor moves the Court on an emergency basis for interim authority to use cash collateral**

Pursuant to section 363 of title 11, United States Code (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure, CARL'S FURNITURE, INC. d/b/a CARL'S, the Debtor and Debtor-in-Possession (the "Debtor"), moves the Court for the entry of an order authorizing its continued use of cash collateral on which RETAIL CREDIT CORPORATION ("Retail Credit") alleges a first priority lien and to provide continued adequate protection to Retail Credit. In support of its motion, the Debtor states:

1.      This case was commenced by the filing of voluntary petitions under Chapter 11 of the Bankruptcy Code on May 24, 2011 [D.E. #1]. The Debtor has continued to operate its business and manage its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2.      The Debtor is a retail furniture store with stores located at <u>6810 North State Road 7,</u>

Coconut Creek, Fl 33069 (Store #54 showroom and corporate offices); 2301 W. Atlantic Boulevard, Pompano Beach, FL 33069 (Store #53); 3700 North Federal Highway, Ft Lauderdale, FL 33308 (Store #55) and a Warehouse Distribution Center located at 5480 West Hillsboro Boulevard, Coconut Creek, FL 33073.

3.  As of the filing date, Retail Credit alleges that the Debtor is indebted to it in the principal amount of $582,000.05 and accrued and unpaid interest of approximately $43,650.00 for a total of $625,650.05, plus costs and fees due pursuant to applicable law (the "Indebtedness") pursuant to a Promissory Note and Security Agreement dated December 29, 2009 in the principal amount of $1,500,000.00. **Retail Credit Corporation is a company owned by Myron Baker, the father of Jeff Baker, President of Carl's Furniture, Inc. Myron Baker is a Director and shareholder of the Debtor.**

4.  The Indebtedness is secured by, among other things, a Security Agreement (Chattel Mortgage) dated December 29, 2009. The security interest is perfected by the filing of a UCC-1 Financing Statement with the Florida Secured Transaction Registry on March 24, 2010 at docket #201002220170.

5.  The cash generated by the Debtor constitutes cash collateral within the meaning of § 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Debtor requires the use of the Cash Collateral for the continued operation of its business in the ordinary course, including payment of expenses attendant thereto; and, the Debtor is willing to provide Retail Credit with adequate protection of its secured interest in the Cash Collateral. Without the use of the Cash Collateral, the Debtor will be forced to discontinue its business operations. The loan documents are available from undersigned counsel upon request.

6.  By the terms of the loan documents, the Debtor granted to Retail Credit a security

interest in all assets of the Debtor, including, but not limited to, occupational and business licenses, furniture, fixtures, signage, furniture and accessories constituting inventory, all inventory, accounts receivable and notes receivable belonging to the debtor, with any and all replacements, accessions and any and all other property rights that may derive from or accrue to the Collateral and all general intangibles (the "Collateral").

7. In order (i) to adequately protect Retail Credit in connection with the Debtor's use of the Cash Collateral, and (ii) to provide Retail Credit with additional adequate protection in respect to any decrease in the value of its interests in the Collateral resulting from the stay imposed under § 362 of the Bankruptcy Code or the use of the Collateral by the Debtor, the Debtor would offer as adequate protection of Retail Credit's lien, a first priority post-petition lien on all cash generated post-petition.

8. An immediate and critical need exists for the Debtor to be permitted to access to Cash Collateral to continue to operate. Therefore, the Debtor seeks a preliminary hearing in accordance with Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). At the Preliminary Hearing, the Debtor will seek entry of an Interim Order in order to preserve the value of its assets so as to avoid immediate and irreparable harm to the estate and to afford the Debtor adequate time to negotiate and seek approval for additional cash collateral use, subject to and within the limits imposed by the mutually agreed upon Budget.

9. Accordingly, it is appropriate for the Court to enter an order authorizing the use of Cash Collateral by the Debtor in accordance with the terms of the attached Budget hereto as Exhibit "A".

10. The terms of the proposed use of the Cash Collateral and adequate protection

arrangements are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment.

11.     The Debtor believes that the relief sought in this Motion is in the best interest of the Debtor, the estate and creditors and that the entry of an Interim Order will allow for the continued operation of the Debtor's existing business for the purposes set forth above.

12.     The secured creditor consents to the use of its cash collateral.

**WHEREFORE**, the Debtor respectfully requests an order authorizing the use of the Cash Collateral pursuant to the terms described herein and granting such other relief as this Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing will be furnished to all creditors and interested parties with the Notice of Hearing on this Motion.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

RESPECTFULLY SUBMITTED  5/25/2011 .

FURR AND COHEN, P.A.
Attorney for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532-fax

By /s/ Robert C. Furr
ROBERT C. FURR, ESQ.
Florida Bar No. 210854
EMAIL rfurr@furrcohen.com

**SERVED VIA ECF NOTICE:**

Office of United States Trustee

Carl's Furniture Inc.
Projected Financial Results
Revision: 5/04/2010
Apr 2011 to Apr 2012
Two Store Totals
Rev 3/29/2011

Cash Flow Projection

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 70 | 80 | 80 | 80 | 100 | 125 | 100 | 125 | 125 | 125 | 100 | |
| Sales | | 1,137,500 | 1,300,000 | 1,300,000 | 1,300,000 | 1,206,333 | 1,208,333 | 1,208,333 | 1,208,333 | 1,208,333 | 1,208,333 | |
| Retail Sales | | | | | | | | | | | | |
| Wholesale Sales | | | | | | | | | | | | |
| Total Sales | | 1,137,500 | 1,300,000 | 1,300,000 | 1,300,000 | 1,206,333 | 1,208,333 | 1,208,333 | 1,208,333 | 1,208,333 | 1,208,333 | |
| Cost of Sales | | 659,750 | 754,000 | 754,000 | 754,000 | 700,833 | 700,833 | 700,833 | 700,833 | 700,833 | 700,833 | |
| Cost of Goods Sold | | 659,750 | 754,000 | 754,000 | 754,000 | 700,833 | 700,833 | 700,833 | 700,833 | 700,833 | 700,833 | |
| % | | | | | | | | | | | | |
| Gross Profit | | 477,750 | 546,000 | 546,000 | 546,000 | 507,500 | 507,500 | 507,500 | 507,500 | 507,500 | 507,500 | |
| GP% | | | | | | | | | | | | |
| Sales - Warehouse to Stores | | | | | | | | | | | | |
| Gross Profit - InterCompany | | | | | | | | | | | | |
| Service Plan Profit | | 22,750 | 26,000 | 26,000 | 26,000 | 24,167 | 24,167 | 24,167 | 24,167 | 24,167 | 24,167 | |
| Service Plan Cost | | -4,100 | -10,400 | -10,400 | -10,400 | -9,667 | -9,667 | -9,667 | -9,667 | -9,667 | -9,667 | |
| Total Gross Profit | | 548,002 | 626,288 | 626,288 | 626,288 | 582,127 | 582,127 | 582,127 | 582,127 | 582,127 | 582,127 | |
| Operating Expenses | | | | | | | | | | | | |
| Advertising Expense | | $85,912.50 | $97,500.00 | $97,500.00 | $97,500.00 | $90,625.00 | $90,625.00 | $90,625.00 | $90,625.00 | $90,625.00 | $90,625.00 | |
| Sales Expense Commission | | $113,750.00 | $130,000.00 | $130,000.00 | $130,000.00 | $120,833.33 | $120,833.33 | $120,833.33 | $120,833.33 | $120,833.33 | $120,833.33 | |
| Sales Expense Management | | $111,474.20 | $113,089.20 | $113,089.20 | $113,089.20 | $112,182.53 | $115,203.37 | $115,203.37 | $115,203.37 | $115,203.37 | $112,182.53 | |
| Sales Display Expense | | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | $12,000.00 | |
| Sales Expense Other | | $31,457.50 | $35,500.00 | $35,500.00 | $35,500.00 | $33,208.33 | $33,208.33 | $33,208.33 | $33,208.33 | $33,208.33 | $33,208.33 | |
| Delivery Expense | | $3,000.00 | $3,000.00 | $3,000.00 | $3,000.00 | $40,760.42 | $40,760.42 | $40,760.42 | $40,760.42 | $40,760.42 | $40,760.42 | |
| Warehouse Expense | | $30,576.00 | $34,944.00 | $34,944.00 | $34,944.00 | $32,480.00 | $32,480.00 | $32,480.00 | $32,480.00 | $32,480.00 | $32,480.00 | |
| Store Office Expense | | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | $21,000.00 | |
| General & Admin Expense | | $27,187.50 | $28,000.00 | $28,000.00 | $28,000.00 | $27,541.67 | $29,052.08 | $29,052.08 | $29,052.08 | $29,052.08 | $27,541.67 | |
| Occupancy Expense | | $238,612.42 | $238,612.42 | $238,612.42 | $236,612.42 | $144,156.03 | $144,158.03 | $144,158.03 | $144,158.03 | $144,158.03 | $144,158.03 | |
| % | | | | | | | | | | | | |
| Total Expenses | | 674,350 | 713,656 | 713,656 | 713,656 | 597,029 | 602,615 | 602,615 | 602,615 | 602,615 | 597,029 | |
| Net Operating Profit | | -126,348 | -87,368 | -87,368 | -87,368 | -14,902 | -14,902 | -14,902 | -14,902 | -14,902 | -14,902 | |
| Other Income | | | | | | | | | | | | |
| Inventory Shrinkage | | 2,275 | 2,600 | 2,600 | 2,600 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | |
| Write Offs | | 2,275 | 2,600 | 2,600 | 2,600 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | 2,417 | |
| Net Income | | -130,898 | -92,568 | -92,568 | -92,568 | -19,736 | -19,736 | -19,736 | -19,736 | -19,736 | -19,736 | |
| Net Profit | | -130,898 | -92,568 | -92,568 | -92,568 | -19,736 | 55,927 | 55,927 | 55,927 | 55,927 | -19,736 | -244,099 |
| Inventory Build/Decrease | | 200,000 | 100,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| Net Cash Flow | | -330,898 | -192,568 | -92,568 | -92,568 | -19,736 | 55,927 | 55,927 | 55,927 | 55,927 | -19,736 | -244,099 |

Exhibit "A"

## SECURITY AGREEMENT
## (CHATTEL MORTGAGE)

THIS SECURITY AGREEMENT, made the 29 day of Dec, 2009, under the laws of the State of Florida, between **CARL'S FURNITURE, INC.**, a Florida corporation, herein called the Borrower/Debtor, whose address is: **6810 North State Road 7, Coconut Creek, FL 33073**, and **RETAIL CREDIT CORPORATION**, a Florida corporation, herein called the Lender, whose address is **6810 North State Road 7, Coconut Creek, FL 33073**

### WITNESSETH:

1. To secure the payment of an indebtedness in the amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) together with interest of 6.0% per annum on the unpaid balance:

**Interest only payments in the amount of Seven Thousand Five Hundred and 00/100 Dollars ($7,500.00) shall begin on _____ and continue on the _____ (__) of each month thereafter. Payment in full shall be due upon Demand from the Lender.**

as evidenced by a note or notes of even date herewith, and also to secure any other indebtedness or liability of the Debtor to the Lender direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, including all future advances or loans which may be made at the option of the Lender, (all hereinafter called the "obligations") Debtor hereby grants and conveys to the Lender a security interest in the following: All assets of Borrower/Debtor, including but not limited to: certain occupational and business licenses, and furniture, fixtures, signage, and furniture and accessories constituting inventory, all inventory, accounts receivable and notes receivable belonging to the Debtor wherever located, together with any and all replacements, accessions and any and all other property rights that may derive from or accrue to the Collateral and all general intangibles.

2. DEBTOR WARRANTS, COVENANTS AND AGREES AS FOLLOWS: To pay and perform all of the obligations secured by this Agreement according to their terms.

A. To defend the title to the collateral against all persons and against all claims and demands whatsoever, which collateral, except for the security interest granted hereby, is lawfully owned by the Debtor and is now free and clear of any and all liens, security interests, claims, charges, encumbrances, taxes and assessments except as may be set forth in the schedule.

B. On demand of the secured party to do the following: furnish further assurance of title, execute any written agreement or do any other acts necessary to effectuate the purposes and provisions of this Agreement, execute any instrument or statement required by law or otherwise in order to perfect, continue or terminate the security interest of the Secured Party in the collateral and pay all costs of filing in connection therewith.

C. To retain possession of the collateral during the existence of this Agreement and not to

sell, exchange, assign, loan, deliver, lease, mortgage or otherwise dispose of same without the written consent of the Secured Party.

D. To keep the collateral at the location specified in the schedule and not to remove same (except in the usual course of business for temporary periods) without the prior written consent of the Secured Party.

E. To keep the collateral free and clear of all liens, charges, encumbrances, taxes and assessments.

F. To pay, when due, all taxes, assessments and license fees relating to the collateral.

G. To keep the collateral, at Debtor's own cost and expense, in good repair and condition and not to misuse, abuse, waste or allow to deteriorate except for normal wear and tear and to make same available for inspection by the Secured Party at all reasonable times.

H. To keep the collateral insured against loss by fire (including extended coverage), theft and other hazards as the Secured Party may require and to obtain collision insurance if applicable. Policies shall be in such form and amounts and with such companies as the Secured Party may designate. Policies shall be obtained from responsible insurers authorized to do business in this state. Certificates of insurance or policies, payable to the respective parties as their interest may appear, shall be deposited with the Secured Party who is authorized, but under no duty, to obtain such insurance upon failure of the Debtor to do so. Debtor shall give immediate written note to the Secured Party and to insurers of loss or damage to the collateral and shall promptly file proofs of loss with insurers. Debtor hereby appoints the Secured Party the attorney for the Debtor in obtain, adjusting and canceling any such insurance and endorsing settlement drafts and hereby assigns to the Secured Party all sums which may become payable under such insurance, including return premiums and dividends, as additional security for the indebtedness.

I. Of this Agreement is security for a loan to be used to pay a part or all of the purchase price of the collateral; to use the proceeds of the loan to pay the purchase price, filing fees and insurance premiums The Secured Party however, may pay the proceeds directly to the seller of the collateral.

J. To immediately notify the Secured Party in writing of any change in or discontinuance of Debtor's place or places of business and/or residence.

K. That if the collateral has been attached to or is to be attached to real estate, a description of the real estate and the name and address of the record owner is set forth in the schedule herein; if the said collateral is attached to real estate prior to the perfection of the security interest granted hereby, Debtor will on demand of the Secured Party furnish the latter with a disclaimer or disclaimers, signed by all persons having an interest in the real estate, of any interest in the collateral which is prior to Secured Party's interest.

3. THE PARTIES FURTHER AGREE:

A. Notes, if any, executed in connection with this Agreement are separate instruments and may be negotiated by Secured Party without releasing Debtor, the collateral, or any guarantor or co-maker. Debtor consents to any extension of time of payment. If there be more than one Debtor, guarantor or co-maker of this Agreement or of notes secured hereby, the obligation of all shall be primary, joint and several.

B. Waiver of or acquiescence in any default by the Debtor, or failure of the Secured Party to insist upon strict performance by the Debtor of any warranties or agreements in this security agreement, shall not constitute a waiver of any subsequent or other default or failure.

C. Notices to either party shall be in writing and shall be delivered personally or by mail addressed to the party at the address herein set forth or otherwise designated in writing.

D. The Uniform Commercial Code shall govern the rights, duties and remedies of the parties and any provisions herein declared invalid under any law shall not invalidate any other provision or this Agreement.

E. The following shall constitute a default by Debtor: Failure to pay the interest or any installment of principal on the indebtedness or any notes when due. Failure by Debtor to comply with or perform any provision of this Agreement. False or misleading representations or warranties made or given by Debtor in connection with this Agreement. Subjection of the collateral to levy of execution or other judicial process. Commencing of any insolvency proceeding by or against the Debtor or of any guarantor of or surety for the Debtor's obligations. Death of the Debtor or of any Guarantor of or surety for the Debtor's obligations. Any reduction in the value of the collateral or any act of the Debtor which imperils the prospect of full performance or satisfaction of the Debtor's obligations herein.

F. Upon any default of the Debtor and at the option of the Secured Party, the obligations secured by this Agreement shall immediately become due and payable in full without notice or demand and the Secured Party shall have all the rights, remedies and privileges with respect to repossession, retention and sale of the collateral and disposition of the proceeds as are accorded to a Secured Party by the applicable sections of the Uniform Commercial Code respecting "Default", in effect as of the date of this Security Agreement.

G. Upon any default, the Secured Party's reasonable attorneys' fees and the legal and other expenses for pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the collateral shall be chargeable to the Debtor.

H. The Debtor shall remain liable for any deficiency resulting from a sale of the collateral and shall pay any such deficiency forthwith on demand.

I. If the Debtor shall default in the performance of any of the provisions of this Agreement on the Debtor's part to be performed, Secured Party may perform same for the Debtor's account and any monies expended in so doing shall be chargeable with interest to the Debtor and added to the

Indebtedness secured hereby.

J. In conjunction with, addition to or substitution for those rights, Secured Party, at his discretion may: (1) enter upon Debtor's premises peaceably by Secured Party's own means or with legal process and take possession of the collateral, or render it unusable, or dispose of the collateral on the Debtor's premises and the Debtor agrees not to resist or interfere; (2) require Debtor to assemble the collateral and make it available to the Secured Party at a place to be designated by the Secured Party, reasonably convenient to both parties (Debtor agrees that the Secured Party's address as set forth above is a place reasonably convenient for such assembling); (3) unless the collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will give Debtor reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or any other intended disposition thereof is to be made. The requirements of reasonable notice will be met if such notice is mailed, postage prepaid, to the address of the Debtor shown above, at least three days before the time of sale or disposition.

K. Secured Party may assign this Agreement if assigned the assignee shall be entitled, upon notifying the Debtor, to performance of all of Debtor's obligations and agreements hereunder the assignee shall be entitled to all of the rights and remedies of the Secured Party hereunder. Debtor will assert no claims or defenses Debtor may have against the Secured Party against the assignee.

L. The Secured Party is hereby authorized to file a Financing Statement.

M. The terms, warranties and agreements herein shall bind and inure to the benefit of the respective parties hereto, and their respective legal representatives, successors and assigns.

N. **The gender and number used in this Agreement are used as a reference term only and shall apply with the same effect whether the parties are of the masculine or feminine gender, corporate or other form, and the singular shall likewise include the plural.**

O. This Agreement may not be changed orally.

IN WITNESS WHEREOF, the Parties have respectively signed and sealed these presents the ___ day of _Dec_____, 2009.

_____
(Witness)
_____
Printed Name
_____
(Witness)
_____
Printed Name

CARL'S FURNITURE, INC., a Florida corporation

By: _____
    JEFF BAKER, President

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM | FLORIDA SECURED TRANSACTION REGISTRY **FILED** 2010 Mar 24 AM 10:08 \*\*\*\* 201002221070 \*\*\*\* \*\*\*C \* 03241015053101-35.00\*\*\*35.00\*\*\* |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON<br>Ben S Kennedy, Jr. P.A. 561 750 8535 | |
| B. SEND ACKNOWLEDGEMENT TO:<br>Name  Ben S Kennedy, Jr Esq<br>Address  399 West Palmetto Park Rd #200<br>Address<br>City/State/Zip  Boca Raton Fl  33432 | |

**1. DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME<br>Carl's Furniture, Inc. | | | | |
|---|---|---|---|---|
| 1.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1.c MAILING ADDRESS Line One<br>6810 N State Road 7 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY<br>Coconut Creek | STATE<br>FL | POSTAL CODE<br>33073 | COUNTRY<br>USA |
| 1.d TAX ID#<br>59-0914890 | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1.e TYPE OF ORGANIZATION<br>corporation | 1.f JURISDICTION OF ORGANIZATION<br>florida | 1.g ORGANIZATIONAL ID#<br>☑ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| 2.d TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2.e TYPE OF ORGANIZATION | 2.f JURISDICTION OF ORGANIZATION | 2.g ORGANIZATIONAL ID#<br>☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME<br>Retail Credit Corporation | | | | |
|---|---|---|---|---|
| 3.b INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3.c MAILING ADDRESS Line One<br>6810 N State Road 7 | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY<br>Coconut Creek | STATE<br>FL | POSTAL CODE<br>33073 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

Any and All Furniture Inventory owned by the Debtor and/or its affiliates.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG. LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX
☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.01/2009)    Filing Office Copy    Approved by the Secretary of State, State of Florida

*Proposed*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD COUNTY DIVISION

IN RE:

CARL'S FURNITURE, INC.,            CASE NO.
d/b/a CARL'S,                               CHAPTER 11
           Debtor     /

### ORDER GRANTING DEBTOR'S MOTION TO USE CASH COLLATERAL OF RETAIL CREDIT CORPORATION

**THIS CAUSE** came before the Court on _____, in Fort Lauderdale, Flroida upon the Debtor's Motion to Use Cash Collateral of Retail Credit Corporation [D.E.#____] (the "Motion"). Adequate notice of the hearing was given under the circumstances. The Court having reviewed the record and having heard the argument of counsel, being advised that the Debtor and Retail Credit Corporation have agreed to the relief sought as described in the Motion, and being otherwise fully advised in the premises, does hereby

**ORDER and ADJUDGE** as follows:

1. The Motion is **GRANTED** to the extent set forth herein.

2. The Debtor is hereby authorized to use the Cash Collateral (as defined in the Motion) of Retail Credit Corporation in the manner set forth in the Motion and provided in this Order, on an interim basis for Thirty (30) days from the date of this Order.

3. The Debtor is hereby permitted to use Cash Collateral, as defined in 11 U.S.C. § 363 (a), including the cash or noncash proceeds of assets that were not Cash Collateral on the Petition Date ("Cash Collateral") up to the amounts shown in the Budget attached as Exhibit "A" to [DE#_____].

4. As a condition of permitting the Debtor to use Cash Collateral as provided herein, the Debtor will operate strictly in accordance with the Budget and to spend Cash Collateral not to exceed five percent (5%) above the amount shown in the Budget.

5. The Debtor shall provide for an accounting for any use of Retail Credit Corporation's Cash Collateral.

6. The Debtor shall provide year end 2010 financial statements (profit and loss, balance sheet, etc) within ten (10) days of the date of this Order.

7. Going forward, the Debtor shall provide to Retail Credit Corporation for the next thirty (30) days, weekly statements identifying the actual income and expenses for the operations, and the Debtor shall provide those statements by the Wednesday of the week following the week identified in the statements.

8. As adequate protection payments to Retail Credit Corporation, the Debtor shall pay to Retail Credit Corporation $_____ for the 30 days use of cash collateral.

9. As adequate protection for the use of Cash Collateral and for any diminution in value of the Retail Credit Corporation's prepetition collateral as described in the loan documents between the Debtor and Retail Credit Corporation (the "Prepetition Collateral") and post-petition interest, costs, and fees ("Post-petition Indebtedness"), and as security of the Post-petition Indebtedness, Retail Credit Corporation is hereby granted a valid, perfected lien upon and security interests in, all furniture, fixtures, signage, and furniture and accessories consisting of inventory, accounts receivable, and note receivables belonging to the debtor upon which Retail Credit Corporation held a lien pre-petition or the proceeds of such collateral, wheresoever located and whether now existing or hereafter arising or acquired by the Debtor, without claims, offsets, or defenses, including without limitation the following (collectively, the "Post-petition Collateral") and shall make adequate protection payments to Retail Credit Corporation in the amount of $_____ which is a part of the Budget attached as Exhibit "A" to [DE#40].

10. Unless waived by Retail Credit Corporation, the Debtor shall immediately cease using Cash Collateral upon the occurrence of one of the following events (an "Event of Default"):

    a. If the Debtor or any other party-in-interest institutes any litigation of any type or nature against Retail Credit Corporation;

    b. If a trustee is appointed in this Chapter 11 Case;

    c. If the Debtor breaches any term or condition of this Order or any of Retail Credit Corporation's loan documents, other than defaults existing as of the Petition Date;

    d. If the Case is converted to a case under Chapter 7 of the Bankruptcy Code; or

    e. The case is dismissed.

11. The Debtor shall immediately cease using any Cash Collateral upon receipt of a written notice from Retail Credit Corporation that an Event of Default has occurred. Upon the filing of an appropriate motion, the party that gave notice shall be entitled to a hearing on not more than two (2) business days notice (subject to the Court's docket), which notice period commences the day on which actual service of a notice of an Event of Default is made by fax or by hand delivery on counsel for the Debtor, at which time Retail Credit Corporation may seek relief, including, without limitation, the following:

    f. The lifting of the automatic stay under 11 U.S.C. §362 and permitting Retail Credit Corporation to take possession of all or a part of the Prepetition Collateral;

    g. The abandonment and immediate delivery to Retail Credit Corporation of all or any part of the Prepetition Collateral, which Retail Credit Corporation shall be permitted to sell in accordance with applicable law, either piecemeal or as a going concern;

    h. The entry of an order prohibiting or limiting the further use of Cash Collateral;

    i. The appointment of a trustee in either chapter 11 proceeding or the entry of an order converting the Case to chapter 7; and/or

    e. Such further or other relief as provided in Retail Credit Corporation's loan documents, the Bankruptcy Code, or applicable non-bankruptcy law, including, without limitation, accelerating all indebtedness.

12. In addition to Retail Credit Corporation's right upon the occurrence of an Event of Default, the agreements by Retail Credit Corporation as set forth herein to allow the use of Cash Collateral may be terminated by Retail Credit Corporation prior to the occurrence of an Event of Default, without cause, at any time upon ten (10) business days written notice to the Debtor (with copies to the Debtor's counsel, the U.S. Trustee, and the Court approved counsel for any official committees appointed in this case). Such

notice shall be delivered by hand delivery, fax, or overnight mail. Upon termination, the Prepetition Indebtedness and Post-petition Indebtedness, including all accrued and accruing interest, costs, and expenses, including reasonable attorneys' fees, shall then be immediately due and payable; provided however, that the obligations and rights of Retail Credit Corporation and the Debtor with respect to all transactions which have occurred prior to such termination, including, without limitation, Retail Credit Corporation's security interests in and liens on the Prepetition Collateral and Post-petition Collateral shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided further that upon such termination Retail Credit Corporation shall be deemed to have retained all its rights and remedies, including, without limitation, those provided pursuant to the Bankruptcy Code and applicable non-bankruptcy law.

13.   Upon receipt of a notice of an Event of Default or if Retail Credit Corporation exercises its rights under Paragraph 10 the Debtor shall be entitled to file an appropriate motion for authority to use Cash Collateral (the "Cash Collateral Motion"), provided, however, that Retail Credit Corporation shall be given at least two (2) business days written notice of any hearing (subject to the Court's docket), which notice period commences the day on which actual service is made by fax or by hand delivery on the respective Counsel for Retail Credit Corporation , of the Cash Collateral Motion, and the Retail Credit Corporation  shall be free to oppose the Cash Collateral Motion and assert any objections available to them under applicable law.  In connection with the Cash Collateral Motion or any other actions taken by Retail Credit Corporation , including actions to lift the automatic stay or prohibit the use of Cash Collateral, all terms of this

Order shall be conclusive. The Debtor agrees that it shall not seek to grant a lien that is equal or senior to the Prepetition Collateral.

14. Payment by the Debtor of expenses other than those set forth in the submitted Budget shall constitute cause to seek to lift the automatic stay in accordance with the provisions of this Order unless Retail Credit Corporation consents to those changes in writing. In consenting to a Budget and by taking any other actions pursuant to this Order, Retail Credit Corporation shall not have any liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operation or management of the Debtor.

15. This Order shall be binding on a subsequently appointed Chapter 11 or Chapter 7 Trustee in Bankruptcy.

16. Retail Credit Corporation shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any Prepetition Collateral, Post-petition Collateral, or otherwise.

17. The liens and security interest granted to Retail Credit Corporation shall be valid and perfected post-petition without the need for execution or filing of any further documents or instruments otherwise required to be filed or be executed or filed under non-bankruptcy law.

18. The Debtor shall forthwith serve a copy of this Order and the Motion on all parties and counsel entitled to notice pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

19. Final hearing to consider the Debtor's use of the cash Collateral of Retail Credit Corporation shall be held on _____, at _____

a.m./p.m. at U.S. Bankruptcy Court, 299 East Broward Boulevard, Room _____, Fort Lauderdale, FL 33301.

###

Submitted by:
Robert C. Furr, Esq
FURR & COHEN, P.A.
*Attorney for Debtor*
One Boca Place, Suite 337W
2255 Glades Road
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532
e-mail: rfurr@furrcohen.com

COPY FURNISED TO:
Robert C. Furr, Esq
FURR & COHEN, P.A.
*Attorney for Debtor*
One Boca Place, Suite 337W
2255 Glades Road
Boca Raton, FL 33431

ATTORNEY FURR IS DIRECTED TO SERVE COPIES OF THIS ORDER ON ALL PARTIES AND COUNSEL ENTITLED TO NOTICE PURSUANT TO RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND TO FILE A CERTIFICATE OF SERVICE.